UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TEAMSTERS LOCAL UNION NO. 783                                               PLAINTIFF

v.                                                           CIVIL ACTION NO. 3:07CV-650-S

ANHEUSER-BUSCH, INCORPORATED                                                DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on cross-motions of the parties for summary judgment. The plaintiff, Teamsters Local Union No. 783 (the "Union"), seeks to compel arbitration of a grievance filed by Jerry T. Vincent in which he states that "Anheuser Busch is violating my rights under Section 11 of its current collective bargaining agreement with Local 783, IBT by refusing to permit me uninterrupted seniority for all purposes, including pension." Grievance, Sept. 1, 2006. The defendant, Anheuser-Busch, Incorporated ("A-B"), contends that this action does not involve an arbitrable grievance, but rather a claim for benefits under the applicable pension benefit plan. A-B urges that this claim for benefits was determined adversely to Vincent and was affirmed by decision of the Pension Plans Appeals Committee, and therefore A-B is entitled to summary judgment in this matter, as pension matters are not arbitrable.[1]

The material facts are not in dispute. The parties filed a Stipulation of Facts and designation of exhibits which set out the pertinent sequence of events which underlies the issue before us. The stipulated facts are as follows:

---

[1] AB urges that this suit to compel arbitration is barred by the six-month statute of limitations in Section 10(b) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Based upon the undisputed facts, the court would be disinclined to find the complaint time-barred, especially in light of the language of AB's March 19, 2007 letter to Arbitrator Beckman that "[t]he parties have agreed to postpone our March 29, 2007, hearing date. We will contact you if and when we require additional dates." The court will presume, for purposes of this opinion, that the complaint is timely.

Jerry T. Vincent was first employed by A-B on June 19, 1978 when A-B purchased a separate company which had been a distributor for A-B. Vincent had been employed since June 6, 1966 by the distributor as a route salesman, a position he continued to occupy after A-B's purchase of the distributor.

Beginning in May 1981, A-B provided a retirement plan for employees represented by the Union. Exhibit 1[2] is a copy of that plan. Over the years, the plan was amended. The summary plan description for the current "Retirement Plan for Certain Hourly Employees of Anheuser-Busch, Incorporated," is Exhibit 6.

On January 1, 1983, Vincent left A-B and began an uninterrupted, 23-year period of employment as an elected official of the Union.

On September 19, 2005, Vincent notified A-B's Human Resources department of his intention to retire December 30, 2005. (Exhibit 8). On December 23, 2005, A-B sent a letter to Vincent attached to which was an explanation of benefits under the applicable retirement plan, and a Form of Payment Election describing payment options. (Exhibit 9). On February 28, 2006, A-B corresponded with Vincent, noting that the retirement documents had not been returned, and requesting that Vincent contact A-B "to inform us of your decision regarding retirement or return the original forms by March 24, 2006."  (Exhibit 10).

On March 30, 2006, Vincent returned to employment with A-B for one day, was paid five (5) weeks vacation pay, and was terminated from employment effective March 31, 2006.

By letter to A-B's Human Resources Center ("HR") June 9, 2006, Vincent requested his "full entitlement of benefits upon this notice of my retirement." The letter asserted that Vincent's return to A-B for one day of employment on March 30, 2006 "restored [his] full seniority rights under the collective bargaining agreement." (Exhibit 11).

---

[2]The "exhibits" referenced herein are the documents filed with the Stipulation of Facts, (DN 16).

- 2 -

Vincent continued to assert his claim for benefits by letter, requesting "review of the amount of [his] benefits," and "documentation ... to begin a formal process to make this appeal." Vincent stated that his "return [to work] restored ... full seniority rights" and claimed entitlement "to the maximum amount of benefits due a 33 year employee." (Exhibit 13). In September, 2006, Vincent tendered a written grievance to the Union alleging:

> "Anheuser-Busch is violating my rights under Section 11 of its current collective bargaining agreement with Local 783, lET by refusing to permit me uninterrupted seniority for all purposes, including pension."

(Exhibit 17). The settlement he requested was "To be made whole." *Id.*

A-B's Director, Retirement Plans, Ralph J. Buono responded by letter of November 22, 2006, detailing A-B's reasons for denying Vincent's claim. (Exhibit 14). Vincent appealed the determination (Exhibit 15). By letter dated March 7, 2007, the Pension Plans Appeals Committee denied Vincent's appeal. (Exhibit 16).

Local Director of Operations, Rusty Dyer, wrote to schedule a meeting with Vincent and a the Union official to discuss the grievance. (Exhibit 18). A meeting was conducted in November 2007 without resolution of the grievance being reached.

In January, 2007 Arbitrator David Beckman was notified of his selection by A-B and Local 783 to hear and decide Vincent's grievance. (Exhibit 19). The arbitration was scheduled for March 29, 2007. (Exhibit 20). In February, A-B Attorney Ronald Weiss wrote to Beckman confirming scheduling arrangements for the hearing. (Exhibit 21). However, after reviewing the file later that month in connection with the upcoming arbitration hearing, Weiss sent a letter to the Union protesting that any claim for pension benefits raised by Vincent's grievance was "not arbitrable under the labor contract because pension benefits are controlled by the terms of the separate Pension Plan and, therefore, is subject exclusively to the claims procedures established in the Pension Plan." Weiss Letter, Feb. 26, 2007. Weiss informed the Union that A-B did "not agree to submit any question related to [Vincent's] pension to the Arbitrator," and that if the Union intended to pursue

a pension claim in arbitration, "the Union's next step is to file a federal court action to compel arbitration" of that claim. (Exhibit 22). In March, Weiss corresponded with the Union's counsel reiterating A-B's position on arbitrability and advised Union counsel of the Pension Plans Appeals Committee's denial of Vincent's claim. (Exhibits 23 and 24).

The parties agreed to suspend the hearing before Arbitrator Beckman. (Exhibit 25). In October, 2007, the Union's counsel informed Weiss that "IET Local 783 is now prepared to arbitrate this matter." (Exhibit 26). A-B again denied arbitrability of any pension claim embraced by the grievance, and stated that Vincent's pension claim had been "finally and conclusively decided by the Pension Plans Appeals Committee." (Exhibit 27).

The Union commenced this action to compel arbitration.

As this court views the facts, the resolution of this suit to compel arbitration is driven by the timing of events in this matter. Our evaluation of the arbitrability of Vincent's grievance cannot be divorced from the time continuum in which it arose. For the reasons explained more fully below, we find that the grievance is not arbitrable, and will grant summary judgment in favor of A-B.

This court's role is to determine whether the collective bargaining agreement ("CBA") between A-B and the Union creates a duty for the parties to arbitrate the particular grievance. *AT&T Technologies, Inc. v. Communication Workers,* 475 U.S. 643, 106 S.Ct. 1415 (1986). As stated in *Paper, Allied-Industrial, Chemical & Energy Workers Int'l Union Local 5-0550 v. Air Products & Chemicals, Inc.*, 300 F.3d 667, 676 (6th Cir. 2002),

> ...[T]he function of a court with respect to arbitration is limited to the following: (1) assuring that the claim is governed by the contract, (2) ordering parties to arbitration unless the arbitration clause is "not susceptible of an interpretation that covers the asserted dispute"; and (3) refraining from reviewing the merits of an award so long as it "draws its essence from the collective bargaining agreement." [citations omitted]...The Supreme Court outlined the role of the judiciary in matters where the parties to the lawsuit have, in fact, negotiated a collective bargaining agreement to define their rights. Justice Douglas, writing for a unanimous Court, stated as follows:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.

300 F.3d at 677.

Exhibit 7 is the collectively-bargained agreement between A-B and the Union effective from April 8, 2005 through March 1, 2010 (hereinafter "'05-'10 CBA"). This Agreement was in effect when Vincent returned to work for A-B in March, 2006.

The grievance in issue states that A-B is violating Vincent's rights under Section 11 of the CBA by refusing to afford him uninterrupted seniority for all purposes, including pension.

There is apparently no dispute that, with respect to claims for retirement benefits, the plan administrator determines claims for eligibility to participate in A-B's retirement plan or to receive benefits under the plan. This right is exclusive in the administrator and the Pension Plans Appeals Committee. In performing this function, the administrator determine whether that employee meets the criteria to receive benefits under the plan. The administrator looked to the retirement plan in effect at the time of Vincent's retirement and determined that Section 3.4 of the plan in effect at the time of his termination contained provisions establishing that (1) upon termination, Vincent ceased to accrue benefits under the plan, (2) his retirement benefit would be determined on the basis of his credited service and the benefit rate in effect at the time of termination, and (3) upon reemployment, he would have his prior benefit and service restored only if he had ten years vesting service at the time he left employment or if his time away was less than his period of service prior to termination. Vincent was first employed in June 1978 and terminated employment in order to take a Union position in 1983. Vincent does not dispute that he had a 24-year break in service and did not have ten years vesting service upon his termination in 1983.

Vincent began the process to claim pension benefits in 2005, indicating that the effective date of his retirement would be in December. After receiving paperwork containing the benefit

calculation, Vincent did not execute any forms to make his retirement effective. Instead, realizing that the plan in effect at the time of his termination precluded him from obtaining benefits,[3] he returned to employment with A-B for one day in May, 2006 in order to assert that he had returned to employment with A-B "with my seniority fully restored." Vincent Letter, Jan. 19, 2007. He requested "my full entitlement of benefits upon this notice of my retirement. He stated that "My last day as a full time regular employee of Anheuser Busch (Louisville W.O.D.) was May 5, 2006. My hire date if [sic] June, 1963 and my seniority began May, 1967...My return restored my full seniority rights under the collective bargaining agreement." *Id.* Thus Vincent contends that his one-day reemployment[4] retroactively applied "uninterrupted seniority" by virtue of Section 11(b) of the '05-'10 CBA.

To the extent that Vincent seeks to challenge the administrator's determination of his right to benefits under the applicable pension plan, he has not stated a grievance arising under or relating to the interpretation of the CBA, and therefore has not presented an arbitrable grievance. He appealed the administrator's denial of benefits, but was unsuccessful in convincing the committee that his return to employment altered his circumstance.

Secondly, Vincent does not assert an arbitrable grievance inasmuch as his claim is not governed by the '05-'10 CBA.

The administrator determined that Vincent's entitlement to retirement benefits became fixed on the date of his termination from employment by operation of the plan then in force. His return to service 24 years later under a CBA which contains terms applicable to members leaving for Union employment and returning does not help him. Section 11(b) on its face does not apply to him, as Vincent did not leave A-B to take full time employment with the Union under the '05-'10 CBA. He

---

[3] The early calculation of benefits determined that he was entitled to a nominal benefit. Later review established that he was not entitled to any benefit, as he did not have the requisite ten years vesting service at the time of his termination.

[4] Variously referred to as return, reinstatement, reemployment, rehiring. The precise terminology is immaterial.

could not, as he left A-B in 1983. The November 22, 2006 letter from the administrator stated as much, noting that "whatever rights and privileges your reinstatement with seniority may have provided under the ['05-'10] collective bargaining agreement, your entitlement to pension benefits must be determined in accordance with the terms of the applicable pension plan document." Nov. 22, 2006 Letter, p. 1.

In determining arbitrability, the court's analysis must be fact-specific inasmuch as we are required to determine whether the CBA creates a duty to arbitrate *the asserted dispute*. The court is required to determine whether he has made a claim which on its face is governed by the contract. *Paper, Allied Indus., Chem.,* 300 F.3d at 677. The provision upon which this grievance is based, Section 11(b), states that

> When a member of the Union leaves the Employer to take full time employment with the Local Union, he shall after the completion of such employment with the Local Union return to his former position and his seniority shall continue uninterrupted.

This provision includes no language making it retroactive to members who left employment prior to the effective date of the CBA. It states that when a member leaves and returns, his seniority will continue uninterrupted.

As noted at the outset of this opinion, the disposition of this matter is governed by timing. Vincent left employment in 1983. The terms of the retirement plan then in effect halted his accrual of benefits and fixed his benefit rate as of the date of termination. Under the terms of the plan, he did not otherwise qualify for restoration of prior benefits and service for purposes of retirement as he did not have ten years vesting service at that time, and his away time exceeded his time employed. The Union seeks 24 years later to arbitrate a claim for uninterrupted seniority under the provisions of a CBA which came into existence after Vincent's termination. Section 11(b) pertains to Union members covered by the '05-'10 CBA who leave A-B for Union employment under that CBA. There is no retroactivity in this part of the CBA. The plain language of the provision does

not apply to Vincent.  The arbitration clause of the '05-'10 CBA could not cover this dispute, as Vincent's grievance does not arise under or relate to the interpretation of the '05-'10 CBA.  On its face, the claim is clearly not governed by the contract.

For the reasons set forth hereinabove, summary judgment will be granted in favor of Anheuser-Busch, Incorporated.  A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

August 12, 2009

**Charles R. Simpson III, Judge**
**United States District Court**